

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 16 2003

LUTHER D. THOMAS, Clerk
By: _____
                    Deputy Clerk



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA          )
*ex rel.* KIRK S. CORSELLO, *et al.*,   )
                                  )   Civil Action No. 1:98-CV-0204-ODE
                    Plaintiffs,   )
        v.                        )
                                  )
LINCARE, INC., LINCARE            )
HOLDINGS, INC., AMERICAN HOME )
PATIENT, INC., ROTECH, INC., and  )
ALAN VARRAUX, M.D.,               )
                                  )
                    Defendants.   )

## RESPONSE TO LINCARE'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

**1.   The Court has already upheld the retaliation allegations.**

Relator is astonished and baffled at Lincare's decision to file yet another motion

to dismiss, rather than an answer, in response to Relator's Fourth Amended Complaint

("FAC"), since the Court has <u>already</u> held that Relator's allegations state a claim for

retaliation.[1]   In its June 2, 2003 Order on Relator's Second Amended Complaint

("SAC"), the Court stated as follows:

> … Relator also pleaded a retaliation claim against Defendant Lincare similar to
> the retaliation claim against Rotech. Compl. ¶¶ 197-200. … Because the Court
> finds that Relator sufficiently states a claim for retaliation against both Rotech
> and Lincare, the Court modifies its previous order pursuant to Rule 54(b) to

---

[1] Relator notes that Defendant Rotech did file an answer, not a motion to dismiss.

-1-



allow Relator's retaliation claim against Lincare to proceed.

Order, dated June 2, 2003, p. 17 (emphasis added).

The retaliation allegations of the FAC are the same as the allegations of the SAC that the Court held were sufficient to state a claim. *Compare* SAC, ¶¶170-80, 197-200 *with* FAC, ¶¶ 16-26, 34-36. Indeed, the only reason Relator filed a Fourth Amended Complaint was because the Court granted Lincare's motion to strike and for a more definite statement.[2] That motion did not, however, challenge the sufficiency of the retaliation allegations – which had already been upheld by the Court – but merely argued that Relator should be required to remove any allegations in the SAC that were related to the dismissed non-retaliation claims. When the Court granted the motion, Relator responded by filing the FAC, which kept the retaliation allegations against Lincare and Rotech, but removed or recast most of the allegations that Lincare had asserted were irrelevant. In reliance on the Court's previous ruling upholding the retaliation claims, Relator left the retaliation allegations substantively unchanged.

Lincare does not contend that any of the allegations deleted from the SAC are critical to state a claim for retaliation – indeed, such a contention would be directly

_____

[2] Relator previously sought permission to file a Third Amended Complaint, but such permission was denied when the Court initially dismissed the SAC. Relator denominated his most recent pleading the Fourth Amended Complaint in order to avoid confusion.

contrary to Lincare's earlier motion to strike.  In that motion, Lincare stated that "only eleven of [the] paragraphs [in the SAC] relate to the allegations in Count II [the retaliation claim].  See [SAC] ¶¶ 170-180."[3]  Lincare asserted that the remaining factual allegations were irrelevant to the retaliation claim and should therefore be stricken.[4]  Paragraphs 16-26 of the FAC are identical to paragraphs 170-180 of the SAC,[5] so by Lincare's own admission the FAC contains all of the retaliation allegations of the SAC – allegations which the Court has already held were sufficient to state a claim for retaliation.  Under these circumstances, it is absolutely incredible that Lincare would file another motion to dismiss raising grounds previously rejected by the Court, without so much as mentioning the Court's prior ruling.  Lincare's decision to do so can only be characterized as demonstrating a desire to needlessly continue prolonging this case.  The Court should summarily reject Lincare's motion and order it to file an answer immediately so the parties can finally begin litigating this five-year-old case.

---

[3] Memorandum of Law in Support of Defendants' Lincare Inc. and Lincare Holdings, Inc. Motion for: (1) A More Definite Statement, (2) To Strike, or (3) For a Thirty Day Extension of Time to Respond, p. 3 n. 3.

[4] *Id.* at p. 3, 4, 10.

[5] The only difference is that the SAC occasionally refers to Relator as "Mr. Corsello" or "Kirk Corsello," and to Lincare as "Defendant Lincare," while the FAC consistently uses the terms "Relator" and "Lincare."

2.      <u>Lincare's contentions are without merit.</u>

Apart from the fact that the Court has already ruled on the issue, Lincare's

motion to dismiss is groundless on the merits. In considering a motion to dismiss, the

allegations in the complaint must be accepted as true and must be construed in the light

most favorable to the plaintiff. *Land v. Cigna Healthcare*, 339 F.3d 1286, 1289 (11th

Cir. 2003). Moreover, "'a complaint should not be dismissed for failure to state a

claim unless it appears beyond a doubt that the [complainant] can prove no set of facts

in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S.

41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *United States v. Baxter Int'l, Inc.*,

345 F.3d 866, 880 (11th Cir. 2003). Rather than applying these principles, Lincare

misstates the substantive law, construes the allegations of the complaint in the light

most favorable to itself, and essentially asks the Court to <u>assume</u> that Relator will not

be able to prove his case at trial.

In trying to assert that Relator was not engaging in protected activity, Lincare

resorts to a creative use of quotation marks, cobbling together isolated quotations from

completely different cases in a misleading manner. Thus, Lincare categorically asserts

that

-4-

> "[M]erely attempting to get [an employer] to comply with Federal and State regulation," does not qualify as "whistleblowing as envisioned in the paradigm qui tam FCA action" and, thus, "an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations" is not considered "protected activity" under § 3730(h).

Lincare Brief, p. 9. The first two quotes in this statement are lifted from different sentences in a Ninth Circuit decision, while the final quote – which supposedly represents the ultimate legal conclusion to be drawn – is from a completely different D.C. Circuit decision, *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731 (D.C. Cir. 1998). And by artfully leaving out relevant portions of the last quote, Lincare completely distorts the meaning of the case. Following is the complete quote from *Yesudian* placed in relevant context:

> Mere dissatisfaction with one's treatment on the job is not, of course, enough. Nor is an employee's investigation of <u>nothing more than</u> his employer's non-compliance with federal or state regulations. *See Hopper*, 91 F.3d at 1269; *Ramseyer*, 90 F.3d at 1523; *see also Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) ("Simply reporting his concern of a *mischarging* to the government to his supervisor does not suffice to establish that Zahodnick was acting 'in furtherance of' a qui tam action.") (emphasis added). To be covered by the False Claims Act, the plaintiff's investigation <u>must concern "false or fraudulent" claims</u>.

*Yesudian, supra* at 740 (underlining added). When the full quote, rather than Lincare's carefully selected portion, is thus considered, it is clear that *Yesudian* was not, as Lincare implies, holding that internal investigation of billing issues cannot constitute protected activity – rather, *Yesudian* merely said that the investigation must concern

"false or fraudulent claims" as opposed to mere "mischarging." In the present case, of course, Relator has expressly alleged that his investigation and reporting concerned "Medicare fraud," and not mere "mischarging" or "regulatory violations." FAC, ¶¶ 17-23. Thus, far from supporting Lincare's position, *Yesudian* strongly supports Relator.

Although not mentioned by Lincare, *Yesudian* also expressly rejects Lincare's assertion that internal reporting of fraud cannot constitute protected activity. The *Yesudian* Court favorably noted that "several courts have said that internal reporting of false claims is itself an example of a protected activity,"[6] and stated that "many courts, including this one, have held that internal reporting is sufficient to bring an employee within the protection of the whistleblower provisions of other federal statutes." *Yesudian, supra* at 741 n.9. The Court went on to state that

> Nor would it be in the interest of law-abiding employers for the statute to force employees to report their concerns outside the corporation in order to gain whistleblower protection. Such a requirement would bypass internal controls and hotlines, damage corporate efforts at self-policing, and make it difficult for corporations and boards of directors to discover and correct on their own false claims made by rogue employees or managers. *Cf. Passaic Valley Sewerage Comm'rs v. Department of Labor*, 992 F.2d 474, 478-79 (3d Cir. 1993)

---

[6] *See U.S. ex rel. McKenzie v. Bellsouth Telcoms.*, 123 F.3d 935, 944 (6th Cir. 1997); *Robertson v. Bell Helicopter Textron*, 32 F.3d 948, 951 (5th Cir. 1994) (noting that internal reporting may constitute protected activity where employees "express concerns about possible fraud to their employers"); *Mikes v. Strauss*, 889 F. Supp. 746, 752 (S.D.N.Y. 1995) (employee engaged in protected conduct where she observed misuse of medical tests, investigated patient histories indicating that tests were overutilized, and confronted defendants with her observations, even where employee did not expressly assert fraud).

> ("Employees should not be discouraged from the normal route of pursuing internal remedies before going public ... [as this] facilitates prompt voluntary remediation and compliance with the Clean Water Act."); *Bechtel*, 50 F.3d at 931-33 (applying same analysis to Energy Reorganization Act).

*Yesudian, supra* at 742.

In an analogous case involving the whistleblower protection provisions of the Energy Reorganization Act, the Eleventh Circuit upheld the agency's determination that internal complaints constituted protected activity:

> The Secretary's interpretation promotes the remedial purposes of the statute and avoids the unwitting consequence of preemptive retaliation, which would allow the whistleblowers to be fired or otherwise discriminated against with impunity for internal complaints before they have a chance to bring them before an appropriate agency. . . . This construction encourages safety concerns to be raised and resolved promptly and at the lowest possible level of bureaucracy, facilitating voluntary compliance with the ERA and avoiding the unnecessary expense and delay of formal investigations and litigation.

*Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926, 932-33 (11th Cir. 1995). Similarly, an employee engages in protected activity under the FCA when he investigates potential Medicare fraud and brings his observations to the attention of his employer, because in such circumstances, it is clear that the filing of an FCA action is a "distinct possibility." *See U.S. ex rel. Childree v. UAG CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996).

Lincare bizarrely asserts that it was not placed on notice that Relator was engaging in protected activity because Relator "had not filed a FCA action, alerted a

governmental authority of the company's supposed wrongdoing, assisted with any external investigation, been contacted by any governmental authority, or reported any of the alleged misconduct outside Lincare's internal information channels." Lincare Brief, p. 14. This assertion is laughable in its disingenuousness, since all of these actions represent external reporting, and thus would not have placed Lincare on notice of anything anyway. Moreover, Lincare chooses to completely ignore binding Eleventh Circuit authority which holds that a relator need not even be aware of the False Claims Act to be protected by § 3730(h), much less advise his employer that he is considering an FCA action. *See Childree*, 92 F.3d at 1146.[7] All that an employer must know is that the employee is engaging in protected activity, and the FAC clearly alleges that Relator advised Lincare of his investigation regarding Medicare fraud. FAC, ¶¶ 16-23. Accordingly, the FAC clearly alleges that Relator was engaging in activity protected by the statute, and that Lincare was aware of such activity.

Lincare's assertion that an employee can never be protected by § 3730(h) for taking actions that come within the scope of his job duties is absurd and overreaching.

---

[7] Because an employee need not even be aware of the FCA, much less contemplating an action thereunder, Lincare's argument that Relator was motivated by a desire to assure Lincare's compliance with applicable regulations is a complete red herring. *See* Lincare Brief, p. 9-10. The FAC alleges that Relator raised concerns regarding "Medicare fraud," and expressed a fear of retaliation, and thus Lincare clearly had reason to believe Relator was investigating matters which could potentially lead to the filing of an FCA action.

Under Lincare's twisted interpretation of the statute, a company could insulate itself from § 3730(h) liability by simply issuing a memo saying that all employees have a duty to report suspected fraud to the compliance department. The company could then immediately fire any employee who did so without fear of incurring liability, since the employee was simply "doing his job." Such a result is absurd and not in any way consistent with the language or purpose of the statute.

It is arguable that the precise scope of an employee's duties might be relevant in evaluating whether the employer had reason to suspect that the employee was investigating a potential *qui tam* lawsuit. For example, if an employee's duties specifically involve investigating non-compliance with federal regulations and reporting to management on such issues, the mere performance of those duties, in the absence of any other factor, might not cause the employer to be suspicious that the employee is investigating matters that might lead to the filing of an FCA action. *See generally Yesudian, supra* at 744. However, that is a peculiarly factual matter, requiring the jury to consider the precise scope of the employee's duties and the particular circumstances surrounding the employee's communications with his superiors. It is particularly inappropriate to resolve this issue in the context of a motion to dismiss, where the allegations of the complaint are to be construed in the light most favorable to the plaintiff. In the present case, the allegations of the FAC do

-9-

not even purport to set forth the precise scope of Relator's duties, much less show that Relator's complaints were such that, as a matter of law, Lincare could not have been placed on notice that Relator was engaged in protected activity. To the contrary, the FAC alleges, among other things, that Relator informed Lincare of his concerns regarding Medicare fraud by certified letter, specifically informing Lincare of his fear of retaliation. FAC, ¶ 19. Viewed in the light most favorable to Relator, this is hardly the type of action that could not possibly raise suspicion as to the employee's intentions.

At every step of its motion to dismiss, Lincare essentially asks the Court to take the allegations of the FAC and construe them in the light most favorable to Lincare. In considering a motion to dismiss, however, the allegations in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff. *Land, supra,* 339 F.3d at 1289. Moreover, "'a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *United States v. Baxter Int'l, Inc., supra,* 345 F.3d at 880. At this stage of the litigation – before a single witness has been deposed or a single document has been offered into evidence – it is quite simply impossible to claim that Relator can prove no set of facts sufficient to

impose liability on Lincare for retaliation.  Accordingly, the Court should deny the motion to dismiss.

<h3 align="center"><u>CONCLUSION</u></h3>

Because the Court has already upheld the sufficiency of the retaliation allegations, and because the FAC properly states a claim for retaliation, the Court should deny the motion to dismiss and order Lincare to file an immediate answer to the Fourth Amended Complaint.[8]

Respectfully submitted this 15th day of December, 2003.

James B. Helmer, Jr.
Frederick M. Morgan, Jr.
Robert M. Rice
HELMER, MARTINS & MORGAN CO. L.P.A.
Fourth & Walnut Centre, Suite 1900
105 East Fourth Street
Cincinnati, Ohio  45202
Telephone:  (513) 421-2400

---

[8] Counsel certifies that this brief has been prepared using Times New Roman 14 point type.

Scott A. Powell
Don McKenna
HARE, WYNN, NEWELL & NEWTON, LLP
The Massey Building, Suite 800
2025 Third Avenue North
Birmingham, AL 35203-3713
Telephone: (205) 328-5330


Mike Bothwell (069920)
G. Mark Simpson (647725)
BOTHWELL & SIMPSON, P.C.
304 Macy Drive
Roswell, GA 30076
Telephone: (770) 643-1606

Counsel for Plaintiff/Relator Kirk M. Corsello

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* KIRK S. CORSELLO, *et al.*,<br><br>    Plaintiffs/Appellants,<br><br>    v.<br><br>LINCARE, INC., *et al.*,<br><br>    Defendants/Appellees. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )<br>      Civil Action No.<br>      1:98-CV-0204-ODE |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel of record by placing a copy in the U.S. mail, postage prepaid addressed as follows:

Martha Purcell Rogers, Esquire
Nancy Silverman, Esquire
Over, Kaber, Grimes & Shriver
Suite 500
1401 H Street, N.W.
Washington, D.C.  20005-2110

Mina Rhee, Esquire
Assistant United States Attorney
Richard Russell Building
Suite 600
75 Spring Street, S.W.
Atlanta, Georgia 30303

Laurie Oberembt, Esquire
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044

Jerry L. Sims, Esq.
Sims, Moss, Kline & Davis, LLP
3 Ravinia Drive, Suite 1700
Atlanta, GA  30346-2133

John G. Malcolm, Esq.
Malcolm & Schroeder, LLP
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, GA  30305

Robert L. Harding
Railey & Harding, P.A.
20 North Eola Drive
Orlando, Florida 32801

John E. Floyd, Esq.
Lynn M. Adam, Esq.
Bondurant, Mixson & Elmore
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30335

Elizabeth C. Helm, Esq.
Holland & Knight, LLP
Suite 2000, One Atlantic Center
1202 West Peachtree, N.E.
Atlanta, Georgia 30309

Steven D. Gordon, Esq.
Sam J. Salario, Jr., Esq.
Holland & Knight, LLP
2100 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20006

Alan Varraux, MD
60 W. Columbia Street, Suite F
Orlando, FL 32906

This 15th day of December, 2003.